United States District Court
Southern District of Texas
**ENTERED**
September 09, 2020
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ASHLEY LYNN ALLEN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 4:19-CV-1575 |
| | § | |
| ANDREW SAUL,[1] | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Ashley Lynn Allen ("Plaintiff") filed this suit seeking review of the denial of disability and disability insurance benefits under Title II of the Social Security Act ("the Act"), as well as review of the denial of supplemental security income under Title XVI of the Act. ECF No. 1.[2] The Parties filed cross-motions for summary judgment. ECF Nos. 11, 13. Based on the briefing and the record, the Court GRANTS Plaintiff's motion and DENIES Defendant Andrew Saul's ("Commissioner") motion.

---

[1] The suit was originally filed against Nancy A. Berryhill, the then-Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul has been automatically substituted as Defendant.

[2] On March 5, 2020, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). ECF No. 14.

## I.   BACKGROUND

Plaintiff is a 35-year-old woman who has worked as a phone operator, day care teacher, administrative assistant, and receptionist. R. 70, 78. Plaintiff stopped working because she was no longer able to get out of bed in the morning, perform the responsibilities of her employment, or get along with others. R. 42-45.

On March 18, 2017, Plaintiff filed an application under Titles II and XVI, seeking benefits beginning on January 1, 2016 based on bipolar disorder, obsessive compulsive disorder ("OCD"), anxiety, attention deficit hyperactivity disorder ("ADHD"), and major depression. R. 70-71, 218, 220.[3] On May 26, 2017, the Commissioner denied her claims. R. 124. Plaintiff requested reconsideration, and the Commissioner again denied her claims. R. 130, 135. On October 5, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 139. ALJ William Sharp conducted a hearing on April 11, 2018. R. 30-69. Wallace Stanfield, a vocational expert ("VE"), testified at the hearing. R. 53-62. Plaintiff also testified. R. 34-52. On June 26, 2018, the ALJ denied Plaintiff's application for benefits. R. 15-25.[4]

---

[3] The relevant time period is January 1, 2016—Plaintiff's alleged onset date—through December 31, 2020—Plaintiff's last insured date. R. 15. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

[4] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at Step Four. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time

2

On July 16, 2018, Plaintiff requested the Appeals Council to review the ALJ's decision. R. 214-216. On March 1, 2019, the Appeals Council denied Plaintiff's request for review. R. 1-3; *see Sims v. Apfel*, 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the final decision).

On April 30, 2019, Plaintiff filed this civil action. ECF No. 1. In this appeal, Plaintiff asserts that the ALJ failed to properly weigh the medical opinion evidence of record, instead substituting his own lay opinion in determining Plaintiff's RFC, and thus his decision was not based on substantial evidence. ECF No. 12.

## II.    STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a

---

period. R. 17. At Step Two, the ALJ found Plaintiff has the following medically determinable and severe impairments: bipolar disorder, OCD, anxiety disorder, ADHD, and major depressive disorder. R. 17. The ALJ also found that Plaintiff was obese, but that this impairment was not severe. R. 18. At Step Three, the ALJ found Plaintiff's impairments or combination of impairments do not rise to the level of severity of impairments in the listings associated with depressive, bipolar, and related disorders (Listing 12.04) or anxiety and obsessive-compulsive disorders (Listing 12.06). R. 18-19. The ALJ found Plaintiff has the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels but with the following limitations: Plaintiff may need to take antidepressant and antipsychotic medications while at work; must have hazard precautions observed from heights, open flames, dangerous machinery, and exposed electrical currents; can have only occasional in-person interaction with co-workers and the public; must avoid unsupervised interaction with disabled individuals, the elderly, and children under the age of 15; must be limited to low-stress work settings and tasks; cannot adapt to changes in work methods and routines more than once every three weeks; and may be off task up to 10% of the day. R. 19-24. At Step Four, the ALJ found that Plaintiff is capable of performing her past relevant work as an answering service operator and an administrative assistant, and therefore Plaintiff is not disabled as defined under the Act. R. 24-25.

party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive[.]

*Id*.

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id*.; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Nonetheless, the Supreme Court recently reaffirmed that "the threshold for [substantial evidence] is not high." *Biestek*, 139 S. Ct. at 1154.

"The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Thornhill v. Colvin*, No. 14-CV-335, 2015 WL 232844, at *3 (N.D. Tex. Jan. 16, 2015) (citing *Martinez v.*

4

*Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822-23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   ANALYSIS OF PLAINTIFF'S CHALLENGES TO THE ALJ'S DECISION

Plaintiff argues that the ALJ improperly evaluated and weighed medical source opinions of her treating physicians—namely opinions by Mehboob Nazarani, M.D. ("Dr. Nazarani"), a board-certified psychiatrist, and Michelle Schmidt, NP-C ("N.P. Schmidt"), a nurse practitioner—as required by *Newton v. Apfel*, 209 F.3d

448 (5th Cir. 2000), and 20 C.F.R. §§ 404.1527(c) and 416.927(c). ECF No. 12 at

12-20. Instead, Plaintiff argues, the ALJ improperly relied on outdated opinions of

State Agency Medical Consultants ("SAMCs") and on his own lay interpretation of

the medical records, preventing the RFC from reflecting Plaintiff's worsening

mental health conditions. *Id.* at 16-20. Commissioner argues the ALJ's decision to

assign little weight to the treating physicians' opinions was proper because they were

inconsistent with treatment notes and Plaintiff's overall level of functioning. ECF

No. 13 at 6-11. Commissioner also argues that the ALJ gave only partial weight to

the SAMCs' opinions and properly formulated the RFC based on the medical records

as a whole, not his own lay opinion. *Id.* at 8-11. The Court agrees with Plaintiff.[5]

### A. The ALJ Discounted Dr. Nazarani And N.P. Schmidt's Medical Opinions And Gave Partial Weight To The SAMCs' Opinions.

Plaintiff identifies two opinions in her medical records that she argues should

have been afforded more weight: (1) a Mental Impairment Questionnaire completed

by Dr. Nazarani on February 1, 2017, R. 325-329;[6] and (2) a Summary Mental

---

[5] Plaintiff also argues the ALJ improperly evaluated her subjective allegations. ECF No. 12 at 20-23. Given that the Court finds remand appropriate, it need not reach this argument. "Plaintiff may raise any appropriate arguments before the Commissioner on remand." *Littleton v. Comm'r of Soc. Sec.*, No. 16-CV-14, 2017 WL 1397128, at *6 (S.D. Tex. Feb. 22, 2017); *see also Miller v. Saul*, No. 18-CV-1519, 2019 WL 5010621, at *9 (S.D. Tex. Aug. 12, 2019) (addressing only one argument that required remand), *report and recommendation adopted*, 2019 WL 4994530 (Oct. 7, 2019).

[6] This questionnaire was filled out by Shamsa Khalil, P.A. ("P.A. Khalil") and signed by both P.A. Khalil and Dr. Nazarani. R. 327. Neither party argues it was an error for the ALJ to refer to this as Dr. Nazarani's opinion. In any event, a physician's assistant is considered an acceptable medical source under the regulations. 20 C.F.R. §§ 404.1502(a)(8) & 416.902(a)(8).

Assessment completed by N.P. Schmidt and also signed by Dr. Myriam Thiele ("Dr. Thiele"), a psychiatrist,[7] on February 28, 2018, R. 486-493.[8]

In the Mental Impairment Questionnaire, Dr. Nazarani diagnosed Plaintiff with Bipolar Disorder, OCD, Generalized Anxiety Disorder, ADHD, and Insomnia. R. 325. He noted that Plaintiff's most frequent or severe symptoms include manic episodes, irritability, depression, and feelings of worthlessness and that Plaintiff may have outbursts or blurt out inappropriate comments at work. R. 326. He also noted that Plaintiff experiences a "sense of impending doom, bouts of lethargy and fatigue, inability to stay on task, impulsive behavior, [and] change in mood." R. 326. Ultimately, Dr. Nazarani found that Plaintiff has marked limitations in eight areas of mental functioning. R. 329.[9]

---

[7] Commissioner argues that a nurse practitioner is not an acceptable medical source under 20 C.F.R. §§ 404.1513(d) and 416.913(d) and therefore can only be regarded as an "other source" that "may not competently assess medical determinations or opinions of disability." ECF No. 13 at 7. Plaintiff points out that N.P. Schmidt's evaluation was co-signed by Dr. Thiele, the supervising psychiatrist, and thus the Assessment should be viewed as one completed by a treating psychiatrist. ECF No. 12 at 19 n.28. However, Plaintiff recognizes that "the Fifth Circuit has not confronted the issue of what weight is due to opinions of co-signing physicians." *Id.* It is not clear why the ALJ refers to this opinion as one from a nurse practitioner, when it was signed by a treating psychiatrist, yet treats the other report P.A. Khalil prepared as the report of Dr. Nazarani. Regardless, the ALJ treated this opinion as a competent medical source. For the purposes of this discussion, the Court will assume, without deciding, that the co-signature of the psychiatrist is sufficient to consider the opinion an evaluation by a treating doctor.

[8] The record contains two forms completed by N.P. Schmidt on February 28, 2018—one titled "Summary Mental Assessment" and one titled "Mental Impairment Questionnaire." Because these two forms primarily contain the same information and were completed on the same day, the Court treats them as one opinion and refers to them together as the "Summary Mental Assessment."

[9] These marked limitations include: maintaining attention and concentration for extended periods; working in coordination with or near others without being distracted by them; making simple work-related decisions; accepting instructions and responding appropriately to criticism by

7

In the Summary Mental Assessment, N.P. Schmidt noted that Plaintiff's most frequent or severe symptoms relate to impulse control, hostility/irritability, manic episodes, loss of concentration, memory loss, paranoia, panic attacks, and social withdrawal. R. 491.[10] N.P. Schmidt noted that Plaintiff's symptoms are not completely stabilized with medication and anticipated a worsening of anxiety-related symptoms in a work setting. R. 491. She opined that Plaintiff's "life is controlled by her diagnoses." R. 493. Ultimately, N.P. Schmidt found that Plaintiff had marked limitations in thirteen areas of mental functioning. R. 487, 492.[11]

The ALJ assigned "little weight" to the opinions of Dr. Nazarani and N.P. Schmidt without recognizing that Dr. Thiele also signed the opinion. R. 24. Specifically, the ALJ found the severity of limitations N.P. Schmidt noted were inconsistent with the clinical notes finding that Plaintiff was stable with no

---

supervisors; getting along with coworkers or peers without distracting them; responding appropriately to workplace changes; traveling to unfamiliar places or using public transportation; and making plans independently. R. 329.

[10] Specifically, N.P. Schmidt found that Plaintiff has a mood that varies rapidly; is unable to focus, concentrate, or stay on task; is withdrawn and exhibits poor impulse control; has frequent panic attacks and fears leaving home; and has very obsessive and racing thoughts. R. 488.

[11] These marked limitations include: remembering locations and work-like procedures; carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule and consistently being punctual; working in coordination with or near others without being distracted by them; completing a workday without interruptions from psychological symptoms; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting him; adhering to basic standards of neatness; responding appropriately to workplace changes; traveling to unfamiliar places or using public transportation; and making plans independently. R. 487, 492.

worsening symptoms. R. 24. Likewise, the ALJ determined that Dr. Nazarani's findings were inconsistent with Plaintiff's overall functioning and activities of daily living. Finally, the ALJ found that neither N.P. Schmidt nor Dr. Nazarani had "sufficient longitudinal history with the [Plaintiff] to offer such restrictive opinions" and that most of Plaintiff's visits were actually with P.A. Khalil. The ALJ stated that the visits started in mid-2017 and gave "the appearance of treatment designed to support a claim." R. 24.

The ALJ instead chose to assign partial weight to the non-examining State Agency Medical Consultants ("SAMCs"), who determined Plaintiff was not disabled. R. 24.[12] In his reasoning, the ALJ noted that SAMCs are considered experts in their field and that both opinions were consistent with the medical record as a whole, including "normal objective examinations and improvement in symptoms with medications." R. 24 (citing EverHealth treatment records from 2014 to 2018, exhibits 2F, 3F, and 4F). He did not assign their opinions more than partial weight, however, because neither SAMC examined Plaintiff or was able to review additional evidence received at the hearing level. R. 24.

---

[12] At the initial level, Joel Forgus, Ph.D, found that Plaintiff could understand, remember, and carry out simple instructions; make simple decisions; concentrate for moderate periods; and respond appropriately to change within the work environment. R. 70-79; *see also* R. 81-90. At the reconsideration level, Richard Campa, Ph.D, found that Plaintiff was able to understand, remember, and carry out detailed but not complex instructions; make basic decisions; concentrate for extended periods; interact with supervisors and co-workers; accept instructions; and respond to changes in a routine work setting. R. 94-105; *see also* R. 106-17.

### B. The ALJ's Improperly Assigned Little Weight To Plaintiff's Treating Experts' Opinions.

Generally, the ALJ must afford controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairment when it is well-supported by medical evidence and consistent with other evidence of record. 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).[13] "When an ALJ rejects the opinion of the treating physician, the [Fifth Circuit has] held that, 'absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527.'" *Qualls*, 339 F. App'x at 465 (quoting *Newton*, 209 F.3d at 453); *accord Davis v. Berryhill*, No. 16-CV-429, 2017 WL 3701689, at *8 (N.D. Tex. Aug. 10, 2017), *report and recommendation adopted*, 2017 WL 3674856 (Aug. 25, 2017). Under the statutory analysis, the ALJ must evaluate: "(1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the

---

[13] However, the "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," and a treating physician's opinion "may be assigned little or no weight when good cause is shown." *Newton*, 209 F.3d at 455-56 (quotations omitted). "'Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.'" *Qualls*, 339 F. App'x at 465 (quoting *Newton*, 209 F.3d at 456).

consistency of the opinion with the record as a whole; (6) the specialization of the treating physician; and, (7) any other considerations." *Bass v. Saul*, No. 19-CV-1525, 2020 WL 3405794, at *10 (S.D. Tex. June 19, 2020) (citing 20 C.F.R. § 404.1527(c)); *accord Jones v. Colvin*, 638 F. App'x 300, 304 (5th Cir. 2016).

However, an "ALJ does not need to specifically enumerate § 404.1527(c)'s six factors when there is competing first-hand medical evidence *and* the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another, or when the ALJ has weighed the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Romo v. Berryhill*, No. 17-CV-2163, 2018 WL 4146416, at *3 (S.D. Tex. Aug. 30, 2018) (quotations omitted) (emphasis added); *accord Qualls*, 339 F. App'x at 466; *Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (ALJ was not required to consider each *Newton* factor because the record contained competing first-hand medical evidence and the ALJ found one doctor's opinion was more well-founded than another).

Because there is no opinion of another treating or examining doctor that the ALJ considered to be more well-founded than Dr. Nazarani and N.P. Schmidt's opinions, the ALJ was required to perform the six-factor analysis. *See Newton*, 209 F.3d at 453. Although *Newton* does not require the ALJ to "recite each factor as a litany in every case," *Jeffcoat v. Astrue*, No. 08-CV-672, 2010 WL 1685825, at *3

(N.D. Tex. Apr. 23, 2010) (quotations omitted), it is imperative that the ALJ's discussion reflect an accurate understanding of the record.

The ALJ here addressed five of the six factors in his decision,[14] but his determinations for several of factors were incorrect. For example, the ALJ addressed the first three factors—the length of treatment, frequency of examination, and nature and extent of the treatment relationship—when he determined that Dr. Nazarani and N.P. Schmidt had not established a longitudinal history of care with Plaintiff and noted that most of Plaintiff's visits were actually with P.A. Khalil starting in 2017, "giving the appearance [that Plaintiff's] treatment [was] designed to support a claim." R. 24. Contrary to this assessment, however, the medical records show a relationship exists between these treaters and Plaintiff over an extended time period, with some limits.

All three medical professionals—Dr. Nazarani, N.P. Schmidt, and P.A. Khalil—are part of EverHealth in Tomball and Bryan, Texas, where Plaintiff has been a regular patient since 2014.[15] Plaintiff attended appointments at EverHealth 53 times between January 2014 and March 2018, often on a biweekly basis. R. 330-495 (EverHealth records). From the Court's review of the record, 28

---

[14] The ALJ failed to note that Dr. Nazarani was a specialist in psychiatry.

[15] P.A. Khalil stated Plaintiff began treatment at EverHealth on November 8, 2013. R. 325. However, the earliest treatment notes contained in the record are dated January 17, 2014.

of these visits were with P.A. Khalil,[16] six were with N.P. Schmidt,[17] and the remaining were with other medical care professionals.

Plaintiff clearly has an established examining relationship with N.P. Schmidt and P.A. Khalil, both of whom examined Plaintiff for the two opinions in question. Plaintiff's six visits with N.P. Schmidt began in May 2017 and lasted through March 2018—almost a year—which is more than sufficient to create a longitudinal history of care. Similarly, Plaintiff's visits with P.A. Khalil began on January 17, 2014 and lasted until January 2, 2018. While Dr. Nazarani never physically examined Plaintiff, he did electronically sign the records for 40 of Plaintiff's 53 visits at EverHealth.[18] These records establish that Dr. Nazarani was *supervising* the physician assistants and nurse practitioners who examined Plaintiff over a several-

---

[16] R. 418-419 (1/17/14); R. 416-417 (2/12/14); R. 414-415 (3/7/14); R. 412-413 (4/4/14); R. 410-411 (5/2/14); R. 408-409 (5/30/14); R. 406-407 (6/27/14); R. 404-405 (7/25/14); R. 402-403 (8/22/14); R. 398-399 (12/18/14); R. 396-397 (1/15/15); R. 385-386 (6/1/15); R. 363-364 (3/2/16); R. 361-362 (3/30/16); R. 357-358 (5/26/16); R. 351-352 (8/16/16); R. 349-350 (9/12/16); R. 347-348 (10/7/16); R. 345-346 (11/1/16); R. 343-344 (11/29/16); R. 342-343 (12/23/16); R. 338-339 (1/23/17); R. 336-337 (2/20/17); R. 334-335 (3/16/17); R. 332-333 (4/13/17); R. 430-431 (7/25/17); R. 484-485 (12/4/17); R. 482-483 (1/2/18).

[17] R. 436-437 (5/11/17); R. 434-435 (6/2/17); R. 432-433 (6/27/17); R. 480-481 (1/30/18); R. 478-479 (2/27/18); R. 494-495 (3/26/18).

[18] R. 418-19 (1/17/14); R. 416-17 (2/12/14); R. 414-15 (3/7/14); R. 412-13 (4/4/14); R. 410-11 (5/2/14); R. 408-09 (5/30/14); R. 406-07 (6/27/14); R. 404-05 (7/25/14); R. 402-03 (8/22/14); R. 400-01 (9/24/14); R. 398-99 (12/18/14); R. 396-97 (1/15/15); R. 394-95 (3/18/15); R. 392-93 (4/16/15); R. 389-90 (4/30/15); R. 387-88 (5/14/15); R. 385-86 (6/1/15); R. 383-84 (6/11/15); R. 381-82 (6/25/15); R. 379-80 (7/23/15); R. 377-78 (8/20/15); R. 375-76 (9/16/15); R. 373-74 (10/15/15); R. 371-72 (11/12/15); R. 369-70 (12/9/15); R. 367-68 (1/6/16); R. 365-66 (2/4/16); R. 363-64 (3/2/16); R. 361-62 (3/30/16); R. 359-60 (4/27/16); R. 357-58 (5/26/16); R. 355-56 (6/23/16); R. 353-54 (7/19/16); R. 340-41 (12/27/16); R. 436-37 (5/11/17); R. 434-35 (6/2/17); R. 432-33 (6/27/17); R. 480-81 (1/30/18); R. 478-79 (2/27/18); R. 494-95 (3/26/18).

year period. Contrary to the ALJ's opinion, this is sufficient to establish a longitudinal history of care, just not as an examining physician. Moreover, P.A. Khalil prepared the report that Dr. Nazarani co-signed. By the ALJ's own assessment, P.A. Khalil had a longitudinal relationship with the Plaintiff, so it is unclear how the ALJ concluded that Dr. Nazarani who signed most of the records and the report P.A. Khalil prepared did not likewise have a sufficient relationship with Plaintiff.

There was no basis for the ALJ to conclude Plaintiff's treatment was "designed to support a claim" and his analysis of Dr. Nazarani and N.P. Schmidt's opinions cannot stand. *Cf. Newton*, 209 F.3d at 455 ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."). The ALJ, therefore, erred in assigning these opinions little weight.

### C. The ALJ Discounted All Medical Source Opinions That Had Reviewed Plaintiff's Most Recent Medical Records and Therefore Improperly Relied On His Own Lay Interpretation To Determine Plaintiff's RFC.

The ALJ is generally tasked with weighing medical opinions and determining a plaintiff's RFC. *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). However, "an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v.*

*Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (warning an ALJ "must be careful not to succumb to the temptation to play doctor," as "lay intuitions about medical phenomena are often wrong") (quotations omitted). "Consequently, when the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error." *Garcia v. Berryhill*, No. 17-CV-263, 2018 WL 1513688, at \*2 (W.D. Tex. Mar. 27, 2018) (collecting cases); *accord Beachum v. Berryhill*, No. 17-CV-95, 2018 WL 4560214, at \*4 (W.D. Tex. Sept. 21, 2018).

Here, the ALJ gave little weight Dr. Nazarani and N.P. Schmidt's opinions outlining Plaintiff's limitations and instead gave partial weight to the SAMCs' opinions. However, the ALJ himself recognized that the SAMCs "did not review additional evidence received at the hearing level." R. 24. In fact, the SAMCs rendered their opinions before a significant number of Plaintiff's treatment visits at EverHealth,[19] which show worsening symptoms as described below. There were no other medical opinions the ALJ considered. The ALJ, therefore, improperly interpreted the raw medical data contained in the most recent records to formulate

---

[19] The latest SAMC opinion was dated August 4, 2017 and appears to be based on Plaintiff's medical records through that date. *See* R. 96, 108. Plaintiff was seen at EverHealth five times after August 4, 2017. R. 484-485 (12/4/17); R. 482-483 (1/2/18); R. 480-482 (1/30/18); R. 478-479 (2/27/18); R. 494-495 (3/26/18). Moreover, the SAMCs could not have reviewed N.P. Schmidt's opinion, which was completed February 28, 2018. R. 486.

an RFC. *See, e.g.*, *Beachum*, 2018 WL 4560214, at *3-4 (noting that the ALJ, by her own admission, dismissed the medical consultant's opinion and thus improperly determined the RFC based on her lay opinion); *Garcia*, 2018 WL 1513688, at *3 ("[T]he ALJ rejected all opining physicians, credited no ascertainable portions of their opinions, cited raw medical data, and made judgments regarding Plaintiff's RFC. Accordingly, the Court can only conclude that the ALJ substituted his own judgment over the medical opinions of the physicians of record.") (citation omitted).

### D. Plaintiff Was Prejudiced By The ALJ's Errors.

"Procedural perfection in administrative proceedings is not required," however, and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). In other words, Plaintiff must demonstrate prejudice resulting from the ALJ's errors. *See Birge v. Colvin*, No. 12-CV-1777, 2013 WL 5526695, at *19 (N.D. Tex. Sept. 30, 2013) (noting a plaintiff must "show that the ALJ's failure to rely on medical opinion evidence in assessing his RFC casts doubt onto the existence of substantial evidence supporting his disability determination"); *Pennington v. Astrue*, No. 08-CV-3616, 2010 WL 648413, at *22 (S.D. Tex. Feb. 23, 2010) (applying prejudice requirement to errors in discounting a treating physician's opinion).

First, the ALJ's basis for discounting Dr. Nazarani and N.P. Schmidt's opinions was inaccurate and contrary to the evidence. Because Dr. Nazarani and

N.P. Schmidt's opinions call for greater RFC limitations than those the ALJ used, Plaintiff was prejudiced. *See, e.g.*, *Pennington*, 2010 WL 648413, at *21-22 (finding Plaintiff prejudiced, in part, by the ALJ's inaccurate reasons for discounting his treating physician's opinion and remanding the case because proper consideration of the evidence may have resulted in a different disability determination).

Second, the medical records the ALJ interpreted on his own show Plaintiff's symptoms were worsening. For example, in treatment notes dated January 30, 2018, N.P. Schmidt noted that Plaintiff did not want to leave her room, had mood swings, and had life-like nightmares on a weekly basis, ultimately finding that Plaintiff's bipolar and anxiety disorders were uncontrolled. R. 480-81. In treatment notes dated February 27, 2018, Plaintiff rated her anxiety symptoms at 8/10, reported significant problems sleeping, and experienced nightmares 3-4 times per week, and N.P. Schmidt determined that Plaintiff's bipolar disorder, insomnia, and nightmares were uncontrolled. R. 478-79.

Most recently, on March 26, 2018, N.P. Schmidt noted Plaintiff exhibited a depressed mood with constricted affect and found Plaintiff's anxiety, insomnia, and PTSD symptoms were moderate to severe. R. 494. Plaintiff reported that it took "everything she ha[d] to get out of bed in the mornings" and that she was experiencing frequent mood swings that caused her to go into a rage and get in uncontrollable screaming matches with her mother. R. 494. N.P. Schmidt ultimately

found Plaintiff's bipolar disorder, anxiety, insomnia, and nightmares were uncontrolled. R. 495.[20]

Although Plaintiff's symptoms have waxed and waned over time, as mental health conditions often do,[21] Plaintiff's most recent medical records show her condition was worsening. The ALJ's lay interpretation of these records prejudiced Plaintiff, particularly given the ALJ also discounted Dr. Nazarani and N.P. Schmidt's opinions. *See, e.g.*, *Beachum*, 2018 WL 4560214, at *4-5 (finding plaintiff prejudiced by the ALJ's rejection of a medical source that had opined plaintiff's limitations were markedly greater than those imposed by the ALJ); *Garcia*, 2018 WL 1513688, at *3 (same); *Birge*, 2013 WL 5526695, at *19-20 (finding Plaintiff prejudiced by ALJ's rejection of all medical opinion evidence regarding side effects of medication).

The combined effect of the ALJ's errors—the improper evaluation of medical opinion evidence and improper lay interpretation of raw medical data—requires that the case be remanded. Upon remand, the ALJ should obtain updated medical records

---

[20] Also noteworthy, P.A. Khalil wrote a letter to the Social Security Administration on November 15, 2018, outlining Plaintiff's many diagnoses, symptoms, and medications and opining that, although Plaintiff's mental health conditions were moderate to controlled, her prognosis is "long term and will hinder her ability to sustain full time competitive employment." R. 7-8.

[21] *See Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014) (noting that "[c]ycles of improvement and debilitating symptoms are a common occurrence" with mental health illnesses and cautioning against inferring that improvement in symptoms necessarily means a plaintiff can function in work environment, especially "when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work").

and opinion evidence before reevaluating Plaintiff's RFC and disability status. *See*

*Newton*, 209 F.3d at 457-58.

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion for summary judgment, ECF No. 11, and DENIES Commissioner's motion for summary judgment, ECF No. 13. The Commissioner's determination that the Plaintiff is not disabled is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

Signed at Houston, Texas, on September 9, 2020.


_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**